IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re Cambridge Industries Holdings, Inc., Cambridge Industries, Inc., and CE Automotive Trim Systems, Inc., <br><br> Debtors. | Bankruptcy Case No. 00-1919 (LK) <br> (Chapter 11) |
| John J. Caliolo, as Liquidating Trustee for the Cambridge Industries Inc. Liquidating Trust, <br><br> Appellant, <br><br> v. <br><br> Saginaw Bay Plastics, Inc., <br><br> Appellee. | C.A. No. 03-1009 (GMS) |

## MEMORANDUM

### I. INTRODUCTION

Presently before the court is an appeal by John J. Caliolo, as Liquidating Trustee for the Cambridge Industries Inc. Liquidating Trust, of an order by the United States Bankruptcy Court for the District of Delaware dismissing a preference action in which Caliolo sought to avoid preferential transfers to Saginaw Bay Plastics, Inc. ("Saginaw"), pursuant to 11 U.S.C.A. § 547 (2004). For the following reasons, this court will reverse the bankruptcy court and remand the case for proceedings consistent with this opinion.

### II. STANDARD OF REVIEW

In reviewing a case on appeal, the bankruptcy court's factual determinations will not be set aside unless they are clearly erroneous. *See Mellon Bank, N.A. v. Metro Comm., Inc.*, 945 F.2d 635,

641 (3d Cir. 1991), *cert. denied*, 503 U.S. 937, 117 L. Ed. 2d 620, 112 S. Ct. 1476 (1992). Conversely, a bankruptcy court's conclusions of law are subject to plenary review. *See id.*

### III. BACKGROUND

The facts relevant to this appeal, as recited by the bankruptcy court, are not in dispute:

> Saginaw timely filed a proof of claim in the bankruptcy proceeding in the amount of $48,924.71. On October 18, 2000, the Debtors filed its Notice of First Omnibus Objection seeking to reduce Saginaw's claim to $41,726.61. Saginaw responded to Debtors claim objection on October 20, 2000. The parties resolved the claim after a reconciliation and negotiation process and on February 20, 2002, a consent order was entered allowing Saginaw's general unsecured claim in the amount of $36,108.36. On April 4, 2002, Saginaw received its first distribution on the allowed claim in the amount of $4,639.88, as shown by a copy of the check attached to the motion. On May 9, 2002, the Trustee commenced this adversary proceeding seeking to recover alleged preferential transfers in the amount of $296,000.

(Op. at 2-3 (citations to the parties' briefs below have been omitted).)[1]

After the adversary proceeding was commenced, Saginaw moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), incorporated by Fed. R. Bankr. P. 7012(b). That motion was granted by the court below, and Caliolo subsequently appealed to this court.

### IV. DISCUSSION

The question raised by this appeal is whether a bankruptcy trustee, having failed to raise a preference objection to a creditor's claim, pursuant to 11 U.S.C.A. § 502(d) (2004),[2] during the

---

[1] "Op." refers to the written opinion of the bankruptcy court submitted at Tab 8 of the Appellant's Designation of Record and Issues on Appeal. (D.I. 2.)

[2] Section 502(d) provides, in relevant part:

> Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity . . . that is a transferee of a transfer avoidable under [§ 547] of this title, unless such . . . transferee has paid the amount . . . for which such . . . transferee is liable under [§ 550] of this title.

claims-allowance process, has thereby waived his right to initiate a preference action against that creditor at a later date pursuant to § 547. The bankruptcy court answered that question in the affirmative, citing several other cases from this district's bankruptcy courts. *Caliolo v. Azdel, Inc. (In re Cambridge Indus. Holdings, Inc.)*, Nos. 00-1919, 02-03293, 2003 WL 21697190 (Bankr. D. Del. July 18, 2003); *Caliolo v. TKA Fabco Corp. (In re Cambridge Indus. Holdings, Inc.)*, Nos. 00-1919, 00-1921, 02-3405, 2003 WL 1818177 (Bankr. D. Del. Apr. 2, 2003); *LaRoche Indus., Inc. v. Gen. Am. Transp. Corp. (In re LaRoche)*, 284 B.R. 406 (Bankr. D. Del. Sept. 23, 2002). During the pendency of this appeal, however, another bankruptcy judge in this district confronted the same issue and arrived at the opposite conclusion. *TWA Inc. Post Confirmation Estate v. City & County of San Francisco Airports Comm'n (In re TWA Inc. Post Confirmation Estate)*, 305 B.R. 221 (Bankr. D. Del. Jan. 20, 2004). *See also Homeplace of Am., Inc. v. Salton, Inc. (In re Waccamaw's Homeplace)*, 325 B.R. 524, 535 (Bankr. D. Del. May 31, 2005). Therefore, the court is confronted with a lower-court split in need of resolution.

A preferential transfer, or "preference," is "a transfer that enables a creditor to receive payment of a greater percentage of his claim against the debtor than he would have received if the transfer had not been made and he had participated in the distribution of the assets of the bankruptcy estate." H.R. Rep. No. 95-595, at 177 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6138. Historically, preferences have been disfavored by bankruptcy law. *Id.* at 177-78. In response to this practice, Congress included in the Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549, an updated statutory remedy designed to make it easier for trustees to avoid and recover pre-bankruptcy preferential transfers from creditors. *See* H.R. Rep. No. 95-595, at 178-79; *see also* 11 U.S.C.A. §§ 547(b), 550(a) (2004). In addition, a bankruptcy trustee (or other party in interest) is

statutorily authorized to raise a preference objection during the claims-allowance process. § 502(d). If the trustee's objection prevails, the claims of the preference transferee must be disallowed until the transfer is returned. *Id.*

In *Katchen v. Landy*, the Supreme Court explained the role of preference objections raised pursuant to § 57g – the predecessor to § 502(d) – in the overall claims-allowance process:

> Unavoidably and by the very terms of the Act, when a bankruptcy trustee presents a § 57g objection to a claim, the claim can neither be allowed nor disallowed until the preference matter is adjudicated. The objection under § 57g is, like other objections, part and parcel of the allowance process and is subject to summary adjudication by a bankruptcy court. This is the plain import of § 57 and finds support in the same policy of expedition that underlies the necessity for summary action in many other proceedings under the Act.

382 U.S. 323, 330-31 (1966).[3] Thus, according to *Katchen*, when a trustee raises a preference objection to a creditor's claim, the very nature of the statutory scheme requires the bankruptcy court to adjudicate the preference matter before allowing or disallowing the claim. Even a preference matter bearing no relationship to the objected-to claim must nevertheless be adjudicated at that stage because § 502(d), like its predecessor, "is concerned with *creditors* rather than *claims* and thus contemplates that allowance of a claim may be conditioned on surrender of preferences received with

---

[3]*Katchen* was decided prior to the enactment of the Bankruptcy Reform Act of 1978. However, the provision at issue in that case was very similar to § 502(d). It read:

> The claims of creditors who have received or acquired preferences, liens, conveyances, transfers, assignments or encumbrances, void or voidable under this title, shall not be allowed unless such creditors shall surrender such preferences, liens, conveyances, transfers, assignments, or encumbrances.

11 U.S.C. § 93(g) (1976), *repealed by* Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549. Moreover, the legislative history accompanying § 502(d) states that the new version of the statute is "derived from present law." S. Rep. No. 95-989, at 65 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5851. Therefore, *Katchen* is clearly apposite to certain aspects of the present dispute.


respect to transactions unrelated to the claims." *Katchen*, 382 U.S. at 330 n.5 (emphasis in original). However, *Katchen* does *not* stand for the proposition that a trustee waives his right to initiate a preference action against a creditor if he fails to raise a preference objection during the claims-allowance process. That issue was not before the Court. *Peltz v. Gulfcoast Workstation Group (In re Bridge Info. Sys., Inc.)*, 293 B.R. 479, 488 (Bankr. E.D. Mo. May 28, 2003).

The plain language of the statute indicates that § 502(d) is a shield the trustee may raise during the claims-allowance process to deflect the claims of preference transferees, regardless of any relationship between their claims and the preferential transfers they have received. Certainly, if a trustee consents to allow the claim of a preference transferee, his failure to invoke § 502(d) inures to the benefit of that transferee. But, to turn a benefit into a windfall by engrafting a § 547 waiver onto § 502(d) would pervert the letter and spirit of the law, both of which disfavor preferences. The advantage such a waiver would bestow upon sophisticated creditors is manifest. For example, a sophisticated creditor, having accepted a pre-bankruptcy preference in lieu of filing a post-bankruptcy claim, and knowing approximately how much it costs to object to a claim, might file an unrelated claim for less than that cost in the hope that the trustee will make a economically-conscientious decision to forego his objection and, in so doing, inadvertently waive his right to avoid and recover the unrelated preference. Such a result would undermine the very purpose of the statutory scheme, and cannot be countenanced. Simply put, if the trustee fails to raise the § 502(d) shield, he does not thereby drop the sword sheathed in § 547.

The prior bankruptcy cases from this district that hold otherwise are not persuasive. In *LaRoche*, a case relied upon by the lower court in this case, a creditor submitted a claim to which the debtor objected, but only to the extent the claim exceeded a certain, specified amount. 284 B.R.

at 407. The objection was resolved and the claim was allowed. *Id.* at 407-08. The creditor subsequently received a distribution on its claim. *Id.* at 408. Approximately one month after the creditor received the distribution, the debtor initiated a § 547 preference action against the creditor. *Id.* In response, the creditor moved for summary judgment. *Id.* at 407. The *LaRoche* court began its analysis by reading § 502(d) in light of the legislative history, wherein the statute is explained as follows:

> Subsection (d) is derived from present law. It requires disallowance of a claim of a transferee of a voidable transfer *in toto* if the transferee has not paid the amount or turned over the property received as required under the sections under which the transferee's liability arises.

S. Rep. No. 95-989, at 5851. From there, the court concluded that "§ 502(d) stands for the proposition that if a claim is allowed there is no longer a voidable transfer due from that claimant," *LaRoche*, 284 B.R. at 408, and thus granted summary judgment. Although that conclusion might have some syllogistic appeal, it fails to account for other possibilities. Viewed more expansively, § 502(d) stands for the proposition that if a claim is allowed then there is no longer a voidable transfer due from that claimant, *or* the claimant was not in fact a transferee, *or* no § 502(d) objection was raised in the first place. Therefore, the main premise underlying the *LaRoche* decision is flawed.

In *TKA Fabco*, which involved facts similar to the facts of the present case, the bankruptcy court concurred with the holding of *LaRoche*, and further reasoned that a subsequent preference action should be barred on "the principles of claim preclusion." *TKA Fabco*, 2003 WL 1818177, at *2. However, the *TKA Fabco* court did not analyze the elements of claim preclusion in any meaningful way. Furthermore, it does not appear that the bankruptcy court in this case based its decision on the claim preclusion aspect of *TKA Fabco*. Accordingly, this court will express no

opinion regarding that aspect of *TKA Fabco* either. Suffice it to say, because the reasoning in *TKA Fabco* otherwise mirrors the reasoning in *LaRoche*, it is likewise unpersuasive.

Finally, in *Azdel*, another factually-similar case, the bankruptcy court adopted *LaRoche* and *TKA Fabco*, and also concluded that the right to initiate subsequent preference actions must be waived in these circumstances if § 502(d) is to have any substance. *Azdel*, 2003 WL 21697190, at *4. However, that reasoning is based on the faulty premise that the purpose of § 502(d) is to "spare[] all parties the inconvenience of awaiting the outcome of two proceedings in order to know a creditor's net claim against, or indebtedness to, the bankruptcy estate." *Id.* While expediency and efficiency are clearly ancillary benefits of adjudicating preference matters during the claims-allowance process, *see Katchen*, 382 U.S. at 330-31, it was not to achieve those benefits that Congress created § 502(d). The purpose of the statute is to prevent preference transferees from recovering on any claims until they have returned their preferential transfers. S. Rep. No. 95-989, at 5851. Thus, the reasoning in *Azdel* is fatally flawed.

## V. CONCLUSION

For the foregoing reasons, the court holds that the bankruptcy court erred in granting Saginaw's motion for judgment on the pleadings, and therefore, the case will be remanded for proceedings consistent with this opinion.

Dated: March 2, 2006

UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re Cambridge Industries Holdings, Inc., Cambridge Industries, Inc., and CE Automotive Trim Systems, Inc., <br><br>Debtors. | ) ) ) ) ) ) ) Bankruptcy Case No. 00-1919 (LK) <br> (Chapter 11) |
| John J. Caliolo, as Liquidating Trustee for the Cambridge Industries Inc. Liquidating Trust, <br><br>Appellant, <br><br>v. <br><br>Saginaw Bay Plastics, Inc., <br><br>Appellee. | ) ) ) ) ) ) ) ) ) C.A. No. 03-1009 (GMS) ) ) ) ) ) ) |

## ORDER

IT IS HEREBY ORDERED THAT:

The bankruptcy court's decision of September 25, 2003, be REVERSED, and the case be REMANDED for proceedings consistent with this court's written opinion.

Dated: March 2, 2006

UNITED STATES DISTRICT JUDGE